DAVIS, Circuit Judge.
 

 This case comes to us on interlocutory appeal from a decision of the United States Claims Court pursuant to § 125(b) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25, 36-37 (1982) (codified at 28 U.S.C. § 1292(d)(2)).
 
 [1]
 
 The trial judge granted the government’s motion to dismiss appellee’s wrongful removal action in part, but denied the government’s full motion for judgment. The court held that it possessed jurisdiction “over that portion of [appellee’s] claim ... based upon allegations that the dismissal was taken in retaliation for the exercise of first amendment rights.”
 
 Connolly v. United States,
 
 1 Cl.Ct. 312, 323, 554 F.Supp. 1250, 1262 (1982). Finding the first amendment claim “ripe for consideration” by this court, the Claims Court certified the question of its jurisdiction over the first amendment claim to us. This court has granted interlocutory review. Because we now conclude that the Claims Court is without jurisdiction to entertain wrongful removal actions by probationary employees of the Postal Service — ■ whether or not such claims involve first amendment allegations — we affirm in part and reverse in part.
 

 I
 

 Appellee Connolly commenced employment as a probationary employee of the United States Postal Service (USPS) on April 4,1981, at the Flagstaff, Arizona, post office. Serving as a postal clerk, his tasks included, among other things, mail sorting and the lifting of heavy cages containing parcel post packages. One month after Connolly began his service at USPS, he received an initial performance evaluation from his supervisor. That evaluation assessed appellee’s productivity as “unsatisfactory,” and it characterized him as an individual who did not accept criticism
 
 *884
 
 gracefully. The supervisor noted, however, that appellee’s attitude toward criticism had improved somewhat since his hiring.
 

 In the meantime, Connolly began to experience severe pain in his forearms and a numbness in his fingers. He consulted a neurologist, who diagnosed his malady as bilateral carpal tunnel syndrome, a condition which the doctor attributed to appel-lee’s duties. Connolly, at the specialist’s recommendation, began to wear braces on his arms. He also filed a compensation claim with the Department of Labor. The next day — May 13, 1981 — Connolly received a second performance evaluation; it characterized his attitude as unsatisfactory with respect to “productivity and work habits,” “safety,” and “acceptance of criticism.”
 

 On the following day, Connolly submitted a letter to the postmaster at the Flagstaff office, explaining the nature of his injury and recommending safety procedures for lifting and carrying mail. The postmaster returned the letter to him without comment. Later that day, Connolly received a removal notice, separating him for unsatisfactory performance.
 

 Connolly filed a wrongful removal suit in the Court of Claims, seeking reinstatement, back pay, damages, and various other forms of relief. He alleged that his poor performance evaluations and resulting dismissal were motivated by his injury, his compensation claim, and his grievances about the lack of proper safety procedures. The government filed a motion for summary judgment, contending that the Civil Service Reform Act of 1978 precluded probationary employees such as appellee from filing wrongful removal actions in the then Court of Claims.
 
 [2]
 
 Treating the government’s motion as a motion to dismiss the complaint, the trial court dismissed that part of plaintiff’s complaint based upon statutory and regulatory provisions. The court held that it had no jurisdiction over appellee’s claims because alleged violations of Postal Service regulations “cannot form the basis for jurisdiction in [the Claims Court],” and because the Civil Service Reform Act of 1978 effectively bars judicial review of an agency’s dismissal of a probationary employee.
 
 Connolly v. United States, supra, 1
 
 Cl.Ct. at 314-21, 554 F.Supp. at 1254-60.
 

 However, the trial judge denied the government’s motion insofar as it suggested that the first amendment
 
 [3]
 
 did not provide the court with jurisdiction over appellee’s claim. In reviewing Court of Claims precedent on the question of whether the first amendment may serve as a basis for jurisdiction, the court discerned an “irreconcilable tension” between
 
 Featheringill v. United States,
 
 217 Ct.Cl. 24 (1978) and
 
 Jackson v. United States,
 
 192 Ct.Cl. 765, 428 F.2d 844 (1970). The court concluded that it possessed “jurisdiction over that portion of [appellee’s] claim which is based upon the first amendment,”
 
 Connolly, supra,
 
 1 Cl.Ct. at 323, 554 F.Supp. at 1261, and certified that issue to this court for review.
 

 II
 

 At the outset we note that our action on this appeal is not circumscribed by the terms of the trial court’s certification. Section 1292(d)(2), like its counterpart § 1292(b),
 
 see supra
 
 note 1, permits interlocutory appeals from trial court
 
 orders
 
 involving, to some extent, a controlling question of law which is the subject of certification.
 
 See, e.g., Nuclear Engineering Co. v. Scott,
 
 660 F.2d 241, 246 (7th Cir.1981),
 
 cert. denied,
 
 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982);
 
 Consolidated Express, Inc. v. New York Shipping Association,
 
 602 F.2d 494, 502 (3d Cir.1979),
 
 vacated on other grounds,
 
 448 U.S. 902, 100 S.Ct. 3040, 65
 
 *885
 
 L.Ed.2d 1131 (1980);
 
 Dyke v. Gulf Oil Corp.,
 
 601 F.2d 557, 559 n. 3 (Em.App.1979);
 
 Johnson v. Alldredge,
 
 488 F.2d 820, 822-23 (3d Cir.1973),
 
 cert. denied,
 
 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974). Both sections require the courts of appeals to decide
 
 appeals
 
 from trial court
 
 orders,
 
 not merely the particular question certified.
 
 Bersch v. Drexel Firestone, Inc.,
 
 519 F.2d 974, 994 (2d Cir.1975),
 
 cert. denied,
 
 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1976);
 
 Johnson, supra,
 
 488 F.2d at 823.
 

 The legislative history underlying § 1292(b)-. makes it especially clear that a full consideration of all issues material to an interlocutory order is necessary on appeal when — as here — the question arises in the procedural posture of a motion to dismiss the case for lack of jurisdiction. If, upon trial court certification, the court of appeals determines that jurisdiction is lacking (whether or not on the certified ground), interlocutory review saves considerable time and expense on behalf of both courts and litigants. S.Rep. No. 2434, 85th Cong., 2d Sess. 2,
 
 reprinted in
 
 1958 U.S.Code Cong. & Ad.News 5255, 5256. Because the language of § 1292(d)(2) so closely tracks that of § 1292(b),
 
 see supra
 
 note 1, the latter’s legislative history is persuasive with respect to § 1292(d)(2).
 

 We hold, then, that the nature and scope of our review are not limited to the certified question but that we are free to consider all questions material to the trial court’s order sustaining its jurisdiction.
 
 Nuclear Engineering, supra,
 
 660 F.2d at 246;
 
 In re Oil Spill by the Amoco Cadiz,
 
 659 F.2d 789, 793 n. 5 (7th Cir.1981);
 
 Consolidated Express, supra,
 
 602 F.2d at 502,
 
 Katz v. Carte Blanche Corp.,
 
 496 F.2d 747, 754 (3d Cir.) (en banc),
 
 cert. denied,
 
 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). We therefore proceed to consider whether the Claims Court may entertain appellee’s wrongful removal action on any jurisdictional basis.
 

 Ill
 

 The trial court correctly held that it was without jurisdiction to review appellee’s dismissal based upon allegations of regulatory or statutory violations. It is now settled that the Tucker Act does not itself confer a substantive right of recovery; rather, the prospective claimant must invoke substantive rights grounded expressly or by implication in a contract, an act of Congress or a regulation of an executive department.
 
 See United States v. Mitchell,
 
 —U.S.—,— & n. 16, 103 S.Ct. 2961, 2968 & n. 16, 77 L.Ed.2d 580 (1983);
 
 Eastport Steamship Corp.
 
 v.
 
 United States,
 
 178 Ct.Cl. 599, 605, 607, 372 F.2d 1002, 1007, 1009 (1967).
 

 Appellee, as a probationary employee of the Postal Service, cannot rely on alleged violations of Postal Service regulations and the Civil Service Reform Act of 1978, Pub.L. No. 95-454, 92 Stat. 1111 (1978), as the substantive bases for his suit. Even if we assume
 
 arguendo
 
 that the Postal Service failed to comply with its own regulations in ordering appellee’s dismissal, that would not support jurisdiction in the Claims Court. Since the enactment of the Postal Reorganization Act of 1970, Pub.L. No. 91-375, 84 Stat. 719 (1970), the Postal Service has not been considered one of the “executive departments” within the meaning of 5 U.S.C. § 101 (1982).
 
 See
 
 Pub.L. No. 91-375, § 6(c), 84 Stat. 719, 775 (1970),
 
 reprinted in
 
 1970 U.S.Code Cong. & Ad.News 842, 911 (repealing that portion of 5 U.S.C. § 101 which designated the Post Office as an executive department).
 
 [4]
 
 Only the regulations of an “executive department” can form the basis for a regulatory claim cognizable under Tucker Act jurisdiction.
 
 See
 
 28 U.S.C. § 1491 (Supp. V 1981).
 

 
 *886
 
 We also agree with the trial judge’s conclusion that Connolly, as a probationary employee, has no right under the Civil Service Reform Act to seek review of his dismissal in the Claims Court. The Reform Act established a comprehensive scheme for judicial review of adverse actions but at the same time deliberately precluded such review under that Act for probationary employees.
 
 See INS
 
 v.
 
 FLRA,
 
 709 F.2d 724 at 728-729 (D.C.Cir.1983);
 
 Piskadlo v. Veterans’ Administration,
 
 668 F.2d 82, 83 & n. 1 (1st Cir.1982). Civil service employees, as defined by the Act, do not include those serving “probationary or trial” terms of employment. 5 U.S.C. § 7511(a)(1)(A) (1982) . The statutory definition of “employee” denotes the only class of civil service workers entitled to procedural and appeal rights provided by the Act.
 
 See
 
 5 U.S.C. § 7513(b), (d), (e) (1982). On the basis of this explicit legislative exclusion of probationary workers, courts have concluded that probationary employees may not appeal adverse actions under the Act.
 
 See Bush v.
 
 Lucas, — U.S.—,— n. 28, 103 S.Ct. 2404, 2415 n. 28, 76 L.Ed.2d 648 (1983) ;
 
 INS v. FLRA, supra,
 
 709 F.2d at 728;
 
 Piskadlo, supra,
 
 668 F.2d at 83-84 (probationary employees have no statutory right to appeal to Merit Systems Protection Board).
 
 [5]
 

 We think that the legislative history of the Reform Act entirely forecloses the possibility that probationary employees have some sort of unspecified private right of action in the Claims Court under the Act to seek judicial review of their removals. The policy of denying probationary employees the right to challenge such terminations was explicitly outlined in the Senate Report accompanying the Act:
 

 The probationary, or trial period ... is an extension of the examining process to determine an employee’s ability to actually perform the duties of the position. It is inappropriate to restrict an agency’s authority to separate an employee who does not perform acceptably during this period.
 

 S.Rep. No. 969, 95th Cong., 2d Sess. 45 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 2723, 2767.
 
 See also id.
 
 at 48, 1978 U.S.Code Cong. & Ad.News at 2770 (procedural protections and appeal rights do not apply to probationary employees).
 

 Because Congress could have permitted probationers to challenge removals, but expressly declined to do so, we find it incongruous to suppose that appellee has an implied private right of action under the Civil Service Reform Act to seek judicial review of his dismissal.
 
 See INS
 
 v.
 
 FLRA, supra,
 
 709 F.2d at 728. It is the province of other branches, and not the courts, to determine whether probationary employees should be granted the right to judicial review of adverse actions against them.
 
 See Bush, supra, —U.S.
 
 at— - —, 103 S.Ct. at 2415-17. Congress has decided against judicial review in the Reform Act, and we are not free to disturb that judgment.
 

 IY
 

 The trial court wrongly concluded, however, that it possessed jurisdiction over that portion of Connolly’s claim which was predicated upon the first amendment. Although we recognize that if “a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit,”
 
 see United States v.
 
 Mitchell,U.S. —, —, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983), the basic issue is whether the first amendment “can fairly be interpreted as mandating compensation for the damages sustained.”
 
 See id.; United States v. Testan,
 
 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976);
 
 Featheringill
 
 v.
 
 United States,
 
 217 Ct.Cl. 24, 32 (1978);
 
 Eastport Steamship Co. v. United States,
 
 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967).
 

 
 *887
 
 We agree with the Court of Claims that the first amendment, standing alone, cannot be so interpreted to command the payment of money.
 
 Featheringill, supra,
 
 217 Ct.Cl. at 32-33;
 
 see Clark v. United States,
 
 No. 658-80C, slip op. at 7-8 (Ct.Cl. Nov. 6, 1981);
 
 Mullins v. United States,
 
 No. 240-81C, slip op. at 3 (Ct.Cl. Oct. 30, 1981). Like the due process clause of the fifth amendment, the literal terms of the first amendment neither explicitly nor implicitly obligate the federal government to pay damages.
 
 See supra
 
 note 3;
 
 Walton v. United States,
 
 213 Ct.Cl. 755, 757 (1977). That amendment merely forbids Congress from enacting certain types of laws; it does not provide persons aggrieved by governmental action with an action for damages in the absence of some other jurisdictional basis. In construing the contours of Tucker Act jurisdiction, it would be, of course, impertinent for us to consider whether appellee may make such a first amendment claim within the non-monetary jurisdiction of a district court, or in a district court suit against the Postal Service.
 
 Featheringill, supra,
 
 217 Ct.Cl. at 32;
 
 Clark, supra,
 
 slip op. at 8.
 

 In his effort to expand Claims Court jurisdiction to encompass claims founded solely upon the first amendment, appellee cites
 
 Jackson v. United States,
 
 192 Ct.Cl. 765, 428 F.2d 844 (1970) and
 
 Swaaley
 
 v.
 
 United States,
 
 180 Ct.Cl. 1, 376 F.2d 857 (1967). Those cases are quite distinguishable from the one before us. Both
 
 Jackson
 
 and
 
 Swaaley
 
 primarily involved claims for back pay, and the plaintiffs in those cases sought such compensation in accordance with federal pay statutes. Jackson served as a probationary employee of the Department of Agriculture with a GS-9 rating; Swaaley was a WB-11 naval mechanic. Both of those plaintiffs could rely upon pay statutes which provided them with rates of pay, and they had causes of action for back pay under the Tucker Act if such compensation was wrongly withheld.
 
 See, eg.,
 
 5 U.S.C. § 5332(a) (1970) (setting pay schedule for GS employees). Those plaintiffs sought back pay for their allegedly improper removal from positions which they held, and not money damages
 
 per se. Accord Cole v. United States,
 
 689 F.2d 1040 (Ct.Cl.1982). In this light, the Tucker Act jurisdiction of the Court of Claims followed from the pay legislation pertaining to those employees and the latters’ invocation of the first amendment formed part of their claims that they had been illegally deprived of their pay.
 
 Cf. Ah Sam
 
 v.
 
 United States,
 
 682 F.2d 925, 934-35 (Ct.Cl.1982),
 
 cert. denied,
 
 — U.S. —, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983).
 

 Connolly, in contrast, cannot rely upon a pay statute which mandates the payment of money to him. He was employed by the Postal Service, and the Postal Reorganization Act of 1970, Pub.L. No. 91-375, 84 Stat. 719 (1970),
 
 reprinted in
 
 1970 U.S.Code Cong. & Ad.News 842, abrogated the applicability of federal pay statutes to Postal Service employees.
 
 See id.
 
 § 6(c), 84 Stat. 719, 775, 1970 U.S.Code Cong. & Ad. News at 911;
 
 see also
 
 5 U.S.C. §§ 101, 105, 5102 (1982);
 
 cf. White v. Bloomberg,
 
 501 F.2d 1379, 1381 n. 2 (4th Cir.1974). No comparable money-mandating pay statute exists for Postal Service employees.
 

 Nor can we accept Connolly’s contention that the Back Pay Act, 5 U.S.C. § 5596 (1982), provides jurisdiction to hear his first amendment claim. Even assuming that the Back Pay Act is applicable to Postal Service employees
 
 [6]
 
 — an issue which we do not decide — Connolly has failed to show that his separation from the Postal Service violated any relevant statute or regulation covered by the Tucker Act.
 
 See supra
 
 Part III. The Back Pay Act is merely derivative in application; it is not itself a jurisdictional statute.
 
 Montalvo v. United States,
 
 No. 675-81C, slip op. at 3-1 (Ct.Cl. Sept. 10, 1982). We must conclude that, on any theo
 
 *888
 
 ry, the Claims Court lacks jurisdiction over appellee’s first amendment claim.
 
 [7]
 

 V
 

 For these reasons, we affirm the trial court’s determination that it lacks jurisdiction over appellee’s claim to the extent that it is based upon statutes and regulations. We reverse the trial court’s ruling that it possessed jurisdiction over appellee’s first amendment claim. The case is remanded to the Claims Court with instructions to grant judgment in favor of the government by dismissing appellee’s petition for lack of jurisdiction.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 [1]
 

 . The relevant portion of 28 U.S.C. § 1292 provides: "
 

 (d)(2) When any judge of the United States Claims Court, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order. The language of § 1292(d)(2) is virtually identical to 28 U.S.C. § 1292(b) (1976), which governs interlocutory review by other courts of appeals. That subsection provides, in pertinent part:
 

 (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. ...
 

 [2]
 

 . Both parties filed cross-motions for summary judgment in the Court of Claims prior to October 1, 1982, the effective date of the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25. The case was transferred to the United States Claims Court on that date.
 

 [3]
 

 . U.S. Const, amend. I provides:
 

 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
 

 [4]
 

 . Congress made it clear in the Postal Reorganization Act of 1970 that the Postal Service was essentially to be separate from the government.
 
 See
 
 H.R.Rep. No. 1104, 91st Cong., 2d Sess.,
 
 reprinted in
 
 1970 U.S.Code Cong. & Ad. News, 3649, 3657, 3661. Indeed, the Act provides that the Postal Service is empowered to sue and be sued in its own name, 39 U.S.C. § 401(1) (1976), and that the district courts have original jurisdiction over virtually all such actions, 39 U.S.C. § 409(a) (1976).
 

 [5]
 

 . We know of only one possible exception to the rule that probationers have no appeal rights and it does not apply to probationary postal workers. 5 C.F.R. § 315.806(b) accords a limited right of review by the MSPB for civil service probationers alleging improper termination due to partisan political reasons or marital status.
 
 Mastriano v. Federal Aviation Administration,
 
 714 F.2d 1152 (Fed.Cir.1983).
 

 [6]
 

 . The Fourth Circuit has determined that the Back Pay Act no longer applies to the Postal Service.
 
 White v. Bloomberg,
 
 501 F.2d 1379, 1381 n. 2 (4th Cir.1974).
 
 See
 
 5 U.S.C. §§ 101, 104, 105 (1982).
 

 [7]
 

 . “[0]rdinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.” Con
 
 nick v.
 
 Myers,—U.S.—,—, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).