NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**JULIAN R. HOOD, JR.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-2322

---

Appeal from the United States Court of Federal Claims in Nos. 1:15-cv-01200-MBH and 1:15-cv-01501-MBH, Judge Marian Blank Horn.

---

Decided:  November 4, 2016

---

JULIAN R. HOOD, JR., Escondido, CA, pro se.

AMANDA TANTUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.

---

Before LOURIE, MOORE, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Julian R. Hood, Jr. ("Hood"), proceeding pro se, appeals from a final decision of the United States Court of Federal Claims dismissing his complaint in Case Number 15-1200 and his complaint in Case Number 15-1501 under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *Hood v. United States*, 127 Fed. Cl. 192 (Fed. Cl. 2016). We *affirm*.

## I. BACKGROUND

In October 1999, Hood began working as a mail processing clerk with the United States Postal Service ("USPS" or "the agency") in Grand Rapids, Michigan. *Hood*, 127 Fed. Cl. at 198. Hood alleges that, while he was employed with the USPS, "he suffered from numerous medical disabilities, including post-traumatic stress disorder (PTSD), depression, and anxiety." *Id.* According to Hood, these issues required "occupational accommodations in the form of time off, hours restrictions, and worksite preferences." *Id.* Ultimately, on August 22, 2003, the USPS notified Hood that he would be removed from his position on October 11, 2003, for failure to maintain regular attendance. *Id.*

In September 2003, Hood filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging discrimination, denial of Family and Medical Leave Act ("FMLA") leave and rights, retaliation, and a hostile work environment. The agency removed Hood in April 2004. *Id.*

Hood entered into a Settlement Agreement with the USPS in November 2005 that resolved all of his claims pending before the EEOC. Pursuant to that agreement, Hood "waived his rights to all claims, including employment discrimination claims, against the USPS, with the exception of [his] then-pending claim under the Federal

Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101-8193 (2012)." *Id.* In exchange, the agency agreed to pay Hood compensatory damages and attorney fees, and to change the entry on his Standard Form 50 (SF-50) Notification of Personnel Action in his personnel file from "removal" to "resignation." *Id.*

Between 2014 and 2015, Hood filed several complaints in the United States District Court for the Western District of Michigan stemming from his employment with the USPS. *Id.* at 197 n.1 (collecting cases). Relevant to this appeal, on October 24, 2015, Hood filed Case Number 1:14-cv-1104, alleging that the USPS discriminated against him, denied him reasonable accommodations for his disability, and interfered with his ability to obtain FMLA coverage. The USPS moved to dismiss Hood's complaint for failure to state a claim. The district court granted the government's motion, finding, among other things, that Hood's claims were barred by his settlement agreement with the agency. *Hood v. Brennan*, Case Nos. 1:14-CV-1104, et al., 2015 U.S. Dist. LEXIS 89631 (W.D. Mich. July 10, 2015). Hood timely appealed that decision to the Sixth Circuit on August 12, 2015 (docketed as Case Number 15-1937), and that appeal remains pending.

On October 15, 2015, Hood filed a complaint in the Court of Federal Claims (Case Number 15-1200), alleging "breach of express contract and implied in fact contract," breach of the covenant of good faith and fair dealing, misrepresentation and fraudulent concealment, and conspiracy. *Hood*, 127 Fed. Cl. at 198.[1] According to Hood, between 2006 and 2008, the USPS breached the Settlement Agreement on at least three occasions in

---

[1] Hood amended his complaint in Case Number 15-1200 several times. The allegations discussed herein are drawn from all of his complaints.

communications with the Department of Labor when it stated that Hood's employment ended as a result of termination, rather than as a voluntary resignation. *Id.* at 198-99. Hood also alleged that the USPS terminated him because he filed an EEOC complaint, in violation of First Amendment rights, and that he was denied equal protection and due process. *Id.* at 199. Hood further alleged that, between 2001 and 2004, the USPS fraudulently concealed relevant information pertaining to his qualification for protection under the FMLA and misled a FMLA investigator, resulting in denial of FMLA coverage. *Id.* Finally, Hood alleged that the "agency entered into a conspiracy with the Union and [his] attorney," such that he was denied adequate legal representation. *Id.*

Less than two months later, Hood filed a separate complaint with the Court of Federal Claims (Case Number 15-1501) alleging: (1) "regulatory and physical taking of private property (Job and benefits)"; (2) violations of his Fifth and Fourteenth Amendment rights; (3) breach of "Common Law Promissory Estoppel/Quasi contract" for breach of the collective bargaining agreement ("CBA"); (4) denial of equal protection and due process of law; (5) "breach of promise to accommodate under the CBA"; and (6) "breach of implied covenant of good faith and fair dealings for failure to provide equal protection in the workplace." Compl. at 1, *Hood v. United States*, No. 15-cv-1501C (Fed. Cl. Dec. 11, 2015), ECF No. 1. According to Hood, the USPS concealed facts and made misrepresentations to the EEOC which caused a delay in the processing of his claim for compensation with the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). *Hood*, 127 Fed. Cl. at 200.

The government moved to dismiss both of Hood's complaints. As to Case Number 15-1200, the government argued that the Court of Federal Claims lacked jurisdiction to hear his claims, the contract claims were time-barred under 28 U.S.C. § 2501, and Hood failed to state a

claim upon which relief may be granted. The government separately moved to dismiss Hood's complaint in Case Number 15-1501, asserting that: (1) his claims were barred by 28 U.S.C. § 1500, and were otherwise time-barred, (2) the court lacked jurisdiction to hear certain claims; and (3) Hood failed to state a claim upon which relief could be granted.

On May 27, 2016, the Court of Federal Claims issued a single decision granting both of the government's motions. As a threshold matter, the court found Case Number 15-1501 jurisdictionally barred under 28 U.S.C. § 1500. It also found that, even if it could overcome the jurisdictional hurdle of § 1500, dismissal for lack of jurisdiction and failure to state a claim was warranted. Specifically, the Court of Federal Claims concluded that it lacked jurisdiction to address the constitutional claims Hood asserted in both cases and that his contract claims were time-barred. The court further concluded that it lacked jurisdiction to review the tort-based claims in Case Number 15-1200, and that Hood failed to sufficiently allege a takings claim in Case Number 15-1501.

Finally, the court recounted the sheer number of complaints Hood filed "across the federal judiciary system." *Hood*, 127 Fed. Cl. at 216. Because Hood's complaints included allegations that were not warranted by existing law, failed to put forth a nonfrivolous argument for extending or modifying the law, and was "informed on multiple occasions by other federal courts that his claims are time-barred or otherwise fatally flawed," the court deemed his complaints frivolous and vexatious. *Id.* As a sanction, the court barred Hood from filing any future complaints in the Court of Federal Claims without an order from a judge of the court approving such a filing. *Id.*

Hood timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3). We review the Court of Federal

Claims' dismissals de novo. *Frazer v. United States*, 288 F.3d 1347, 1351 (Fed. Cir. 2002).

## II. DISCUSSION

On appeal, Hood argues that the Court of Federal Claims erred in dismissing his complaints in both Case Number 15-1200 and Case Number 15-1501. Specifically, he alleges that the court erred when it: (1) found that it lacked jurisdiction to consider his claims in Case Number 15-1501 pursuant to 28 U.S.C. § 1500; (2) determined that it lacked jurisdiction to consider his claims of constitutional violations; (3) failed to apply equitable tolling and the accrual suspension rule to his contract claims; (4) determined that he failed to sufficiently allege a takings claim in Case Number 15-1501; and (5) found that he failed to plead fraud with particularity in Case Number 15-1200. For the reasons explained below, each of these arguments is without merit.

### A. Section 1500

At the outset, the Court of Federal Claims found that Hood's claims in Case Number 15-1501 were barred under 28 U.S.C. § 1500 because he had previously brought claims based on the same operative facts in district court, and those claims were then on appeal. While the Tucker Act, 28 U.S.C. § 1491(a)(1), grants the Court of Federal Claims jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," § 1500 divests the court of jurisdiction when a related action is pending in another court. Specifically, § 1500 provides that the Court of Federal Claims "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500.

Determining whether § 1500 applies involves two inquiries: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (citation omitted). If the answer to either of these questions is negative, then the Court of Federal Claims retains jurisdiction. *Id.*

As to the first inquiry, whether an earlier-filed suit is "pending" for § 1500 purposes is determined at the time the complaint is filed at the Court of Federal Claims. *Id.* at 1375. Hood filed suit in the Western District of Michigan in October 2014. *Hood*, 127 Fed. Cl. at 206. After the district court dismissed his claims, Hood filed an appeal in the United States Court of Appeals for the Sixth Circuit on August 12, 2015. *Id.* That appeal was still pending on December 11, 2015, when Hood filed his complaint in Case Number 15-1501 with the Court of Federal Claims. *See Brandt*, 710 F.3d at 1380 (a case is "pending" under § 1500 once a notice of appeal is filed). Accordingly, there was an earlier-filed suit pending in the Sixth Circuit when Hood filed his complaint below.

With respect to the second inquiry, two lawsuits are "for or in respect to" the same claim(s) if "they are based on substantially the same operative facts, regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011). As detailed in the decision on appeal, the facts alleged in Hood's Court of Federal Claims complaint are nearly word-for-word identical to the facts alleged in his Western District of Michigan complaint. *Hood*, 127 Fed. Cl. at 206-09 (comparing the complaints). Both cases are based on a nearly identical set of alleged interactions between Hood and the USPS, namely that the agency discriminated against him, failed to provide reasonable accommodations, and failed to allow absences that Hood maintains should have been

permitted. *Id.* Accordingly, the two suits are "based on substantially the same operative facts." *Tohono*, 563 U.S. at 317.

On appeal, although Hood states that he "believe(s) the Court erred when determining that [his] complaints were barred by 28 U.S.C. § 1500," he provides no explanation or support for his position. Informal Br. 12. Because the Court of Federal Claims correctly determined that Hood's complaint in Case Number 15-1501 was based on the same set of operative facts as his pending Sixth Circuit appeal, we agree that the court lacked subject matter jurisdiction under § 1500. As explained below, however, even if Hood's claims in Case Number 15-1501 were not statutorily-barred by 28 U.S.C. § 1500, we find no error in the Court of Federal Claims' decision dismissing that complaint on other grounds.

## B. Constitutional Claims

Turning to Hood's constitutional claims, it is well established that the Court of Federal Claims is a court of limited jurisdiction. Under the Tucker Act, it has authority over claims for money damages against the United States based on sources of substantive law that "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (citations and internal quotation marks omitted). The Tucker Act is merely "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, to pursue a substantive right within the jurisdiction of the Tucker Act, a plaintiff must identify a Constitutional provision, federal statute, executive agency regulation, or a contractual relationship with the United States that provides a substantive right to recover money damages. *See Todd v. United States*,

386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself.").

The Court of Federal Claims correctly concluded that it was without jurisdiction to consider Hood's claims alleging violation of his constitutional right to due process under the Fifth Amendment and his right to equal protection under the Fourteenth Amendment. *Hood*, 127 Fed. Cl. at 209. It is well established that those constitutional provisions do not create a substantive right to money damages from the government. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) ("[T]he Due Process Clauses of the Fifth and Fourteenth Amendments [and] the Equal Protection Clause of the Fourteenth Amendment" do not provide "a sufficient basis for jurisdiction because they do not mandate payment of money by the government."); *see also Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997).

Likewise, the Court of Federal Claims correctly concluded that it lacked jurisdiction to consider Hood's claim for "First Amendment Violation of free Speech" in Case Number 15-1200. *Hood*, 127 Fed. Cl. at 209-10. "That amendment merely forbids Congress from enacting certain types of laws; it does not provide persons aggrieved by governmental action with an action for damages in the absence of some other jurisdictional basis." *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (en banc). As such, we have held the First Amendment, "standing alone, cannot be so interpreted to command the payment of money." *Id.* Accordingly, we affirm the Court of Federal Claims' decision to dismiss Hood's constitutional claims in Case Number 15-1200 and Case Number 15-1501.

## C. Contract Claims

Hood asserted multiple breach of contract claims in both Case Number 15-1200 and Case Number 15-1501,

including breach of the Settlement Agreement, breach of an implied-in-fact contract, breach of common law promissory estoppel, breach of an implied covenant of good faith and fair dealing as to the Settlement Agreement, breach of the promise to accommodate, and breach of the implied covenant of good faith and fair dealing for failure to provide equal treatment in the workplace. *Hood*, 127 Fed. Cl. at 213. The Court of Federal Claims found that Hood's contract claims were time-barred under 28 U.S.C. § 2501, and that neither equitable tolling nor accrual suspension applied. The court likewise rejected Hood's contention that his alleged disability tolled the statute of limitations. As explained below, we find no error in the court's analysis.

Suits against the United States are subject to a six-year statute of limitations. *See* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). It is well established that this limitations period "is jurisdictional and may not be waived or tolled." *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1380-81 (Fed. Cir. 2012) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136-39 (2008)).

The statute of limitations begins to run, and a Tucker Act claim accrues, "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.,* when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue'" for money. *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)). The question of "whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *FloorPro*, 680 F.3d at 1381 (citation omitted).

Generally, "[i]n the case of a breach of a contract, a cause of action accrues when the breach occurs." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011) (quoting *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998)).

The Court of Federal Claims found that, in Case Number 15-1501, Hood's factual allegations spanned from December 2000 through August 2008, and his allegations in Case Number 15-1200 spanned from August 2006 through September 2008. *Hood*, 127 Fed. Cl. at 214. Hood filed his complaint in Case Number 15-1200 on October 15, 2015, and his complaint in Case Number 15-1501 on December 11, 2015—both over six years after the last alleged breach. Because Hood's contract claims were filed more than six years after they accrued, the Court of Federal Claims was without jurisdiction to consider them.

Hood argues that the Court of Federal Claims should have applied principles of equitable tolling and accrual suspension to find his complaint timely. We disagree. First, as noted, equitable tolling is precluded under § 2501. *See FloorPro*, 680 F.3d at 1382 ("Because section 2501's time limit is jurisdictional, the six-year limitations period cannot be extended even in cases where such an extension might be justified on equitable grounds."); *Holmes*, 657 F.3d at 1318 n.11 ("[T]he accrual suspension rule is distinct from equitable tolling, which the Supreme Court has stated is precluded under 28 U.S.C. § 2501.").

As the Court of Federal Claims noted, however, the accrual of a claim under 28 U.S.C. § 2501 may be suspended in certain limited scenarios. The accrual suspension rule provides that "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319. For the rule to apply, the plaintiff "must either show that defendant has concealed its acts with the result that

plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Id.* (citation omitted). "It is a plaintiff's knowledge of the facts of the claim that determines the accrual date." *Young v. United States*, 529 F.3d 1380, 1385 (Fed. Cir. 2008).

The Court of Federal Claims correctly concluded that Hood was not entitled to the benefit of the accrual suspension rule. As the court explained, Hood did not allege that the USPS concealed from him "the actions which form the basis of the breach claims, or that information regarding the alleged breaches was inherently unknowable." *Hood*, 127 Fed. Cl. at 215.

Hood maintains on appeal that he was unaware of his claims until, as part of his Merit Systems Protection Board appeal, the administrative law judge "advised" him that "the agency's actions were arbitrary and capricious." Informal Br. 9. According to Hood, he then requested his records from the Department of Labor's Office of Workers' Compensation Programs ("OWCP") in December 2013, and "discover[ed] that the agency breached the agreement." *Hood*, 127 Fed. Cl. at 215.

As the Court of Federal Claims found, however, Hood did not "allege[] that these records were unavailable, or that he could not have accessed them, prior to December 2013." *Id.* Instead, "the record suggests that the documents which [Hood] alleges contain various breaches of the Settlement Agreement were readily available and that he received them upon request." *Id.* And, although Hood alleges that he was not aware of his claims, the law is clear that "[i]gnorance of rights which should be known is not enough" to suspend the accrual of a claim. *Braude v. United States*, 585 F.2d 1049, 1051 (Ct. Cl. 1978) (quoting *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 358-59 (Ct. Cl. 1967)). Given these circumstances, and because the accrual suspension rule is

"strictly and narrowly applied," we agree with the Court of Federal Claims that Hood's claims should not be suspended to avoid application of the six-year statute of limitations. *See Martinez*, 333 F.3d at 1319 (quoting *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985)).

Hood also alleges that the Court of Federal Claims erred in rejecting his claim for tolling due to his alleged legal disability. Section 2501 states that "[a] petition on the claim of a person under legal disability . . . at the time the claim accrues may be filed within three years after the disability ceases." As our predecessor court explained, "[o]nly a serious impediment can qualify to suspend running of the statute [of limitations]." *Goewey v. United States*, 612 F.2d 539, 544 (Ct. Cl. 1979). Because the law presumes "sanity and competency rather than insanity and incompetency," a plaintiff bears a heavy burden of demonstrating a "legal disability" for purposes of § 2501. *Id.*

Section 2501 "require[s] a mental derangement precluding a person from comprehending rights which he would be otherwise bound to understand." *Id.* at 545. In *Goewey*, for example, although the plaintiff was diagnosed as obsessive compulsive, depressed, and had a diagnosis of "latent schizophrenia," the court found no "legal disability" given his "active involvement" in "efforts to secure" benefits. *Id.* at 543-45. The court explained that the plaintiff's activities "ma[d]e it abundantly clear that [he] was able to understand such complexities and was decidedly not adverse to protecting his interests to the utmost." *Id.* at 545.

Hood argues that the Court of Federal Claims erred when it "determined that [he] was not under a psychiatric/mental illness in 2007." Informal Br. 7. According to Hood, he has "been under a psychiatric disability for ptsd, anxiety, and major depression commencing December

2000 and continuing into the present." *Id.* at 8. The Court of Federal Claims found that, although Hood's medical documents "suggest various medical issues," his complaint "falls short of sufficiently asserting or establishing an inability by plaintiff to comprehend his legal rights during the relevant statute of limitations time period." *Hood*, 127 Fed. Cl. at 215. The court further found that Hood failed to allege "sufficient facts to determine that he suffered from an alleged disability in 2004 when he was removed from his job at the USPS, or since that date." *Id.* at 216.

As the Court of Federal Claims explained, "[t]he general rule is that after the termination of a legal disability the statute of limitations commences to run and the tolling is not reinstated by a recurrence of the disability." *Goewey*, 612 F.2d at 546. Even assuming that Hood did suffer a legal disability at one time, the court noted that one of the documents he submitted, which was "labeled as a physician's initial exam and purportedly a medical record," stated that, as of November 14, 2007, "[c]ognitive functioning and fund of knowledge is intact and age appropriate" and "[t]here are no signs of anxiety." *Hood*, 127 Fed. Cl. at 215. The court concluded that, even if Hood had a disability that terminated on exactly November 14, 2007, "if his disability reoccurred later, the statute of limitations would have continued to run." *Id.* at 216. Thus, even if Hood had a disability in 2006, when his claim would have otherwise begun to accrue, that claim would have expired before he filed either complaint in 2015. *Id.*[2]

---

[2]    Hood submitted several documents for the first time on appeal, including additional medical evidence and 2016 correspondence from the OWCP regarding payment of compensation for an unnamed disability. *See* Informal Br. Ex. B; Motion to Add Additional Medical Evidence,

We agree with the Court of Federal Claims that Hood failed to provide evidence to meet his burden of showing that a mental impairment precluded him from comprehending his legal rights and pursuing his claims. *Hood*, 127 Fed. Cl. at 215. Because neither tolling nor the accrual suspension rule serves to avoid application of the six-year statute of limitations, we agree with the Court of Federal Claims that Hood's contract claims are time-barred.

### D. Takings Claim

In Hood's sole remaining claim in Case Number 15-1501, he alleges that the government's action in terminating his employment amounted to a regulatory and physical taking of private property. The Court of Federal Claims dismissed Hood's takings claim, finding that he failed to "allege a property interest subject to a valid constitutional takings claim." *Hood*, 127 Fed. Cl. at 211. We agree.

The Takings Clause of the Fifth Amendment provides, in part, that private property shall not "be taken for public use without just compensation." U.S. CONST. amend. V, cl. 4. We have developed a two-part test to determine whether a taking has occurred. First, we must determine whether the claimant has established a property interest for purposes of the Fifth Amendment. *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004). "It

---

*Hood v. United States*, No. 16-2322 (Fed. Cir. Aug. 15, 2016), ECF No. 12. Because our review is limited to the evidence in the record before the Court of Federal Claims, we cannot consider new materials presented for the first time on appeal. *See Biery v. United States*, 818 F.3d 704, 710 (Fed. Cir. 2016) ("In general, an appellate court's review is limited to the record presented at the court below."); s*ee* Fed. R. App. P. 10(a).

is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation." *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (citation and quotation marks omitted). Second, if the court identifies a valid property interest, it must determine "whether the governmental action at issue amounted to a compensable taking of that property interest." *Id.*

The Court of Federal Claims found that, to the extent Hood alleges that he had a property interest in his position with the USPS, he "has not sufficiently alleged a cognizable property interest." *Hood*, 127 Fed. Cl. at 211. This court has recognized that, "[i]f the government gives a public employee assurances of continued employment or conditions dismissal only for specific reasons, the public employee has a property interest in continued employment." *Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368, 1374 (Fed. Cir. 1999). As the Court of Federal Claims found, Hood failed to specify whether he received such assurances with respect to his employment with the USPS. *Hood*, 127 Fed. Cl. at 211.

On appeal, Hood submits that: (1) he was "a member of the collective bargaining agreement (CBA), which guaranteed employment rights"; and (2) he believed his position with the USPS was permanent. Informal Br. 11-12. These allegations are not sufficient to show that Hood had a property interest in his continued employment, and even if they were, Hood has not identified a property interest compensable under the takings clause of the Fifth Amendment. Notably, as the Court of Federal Claims concluded, Hood did not allege "that he possessed the right to dispose of, transfer, or exclude others from the USPS job." *Hood*, 127 Fed. Cl. at 211; *see also Members of the Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323, 1331 (Fed. Cir. 2005) ("[T]he decisions by both the Supreme Court and this court imply that a compensable interest [under the takings clause] is indicated by the

absence of express statutory language precluding the formation of a property right in combination with the presence of the right to transfer and the right to exclude.").

As the Court of Federal Claims explained, moreover, when an employee has a property interest in continued public employment, that interest is protected under the due process clause of the Fifth Amendment—not under the takings clause. *See Stone*, 179 F.3d at 1374-75. And, as explained previously, the Court of Federal Claims does not have jurisdiction over claims arising under the due process clause of the Fifth Amendment. Accordingly, the Court of Federal Claims did not err in dismissing Hood's takings claim for failure to state a claim upon which relief may be granted.

## E. Tort Claims

Finally, we address Hood's tort claims. "The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008); *see also* 28 U.S.C. § 1491(a)(1) (limiting jurisdiction "to claims for damages not sounding in tort"). In his second amended complaint in Case Number 15-1200, Hood alleges fraud and conspiracy, both of which are tort claims. *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) ("Because Brown and Darnell's complaints for 'fraudulent assessments' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."); *Hickman v. United States*, 629 F. App'x 988, 991 (Fed. Cir. 2015) ("Because Ms. Hickman's Complaint alleged injuries recognized as torts—i.e., misrepresentation, fraud, and conspiracy—the court lacked the subject matter jurisdiction to hear her claims."). The Court of Federal Claims therefore correctly concluded that it lacked jurisdiction to consider Hood's allegations of fraud and conspiracy.

The court further found that, to the extent Hood's fraud allegations could be construed as claims of contract fraud, he failed to properly state a claim for relief. *Hood*, 127 Fed. Cl. at 212. We find no error in the court's conclusion. Rule 9(b) of the Rules of the Court of Federal Claims, which is identical to its counterpart in the Federal Rules of Civil Procedure, provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As we have explained in the context of the Federal Rules of Civil Procedure, a plaintiff must plead "the who, what, when, where and how" of the alleged fraud. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (citation and quotation marks omitted).

Here, the Court of Federal Claims found that, although Hood's complaint in Case Number 15-1200 "alleges that defendant engaged in fraud," he "does not specifically identify individuals who he asserts committed such fraudulent conduct." *Hood*, 127 Fed. Cl. at 213. Nor does he allege underlying facts from which the court could infer that any of the government's actions were "committed with the requisite state of mind." *Id.*

On appeal, Hood argues that the Court of Federal Claims should have allowed his fraud claims to go forward because he satisfied the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). But those cases considered the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, not Rule 9(b). Indeed, citing Rule 9, the Court in *Twombly* specifically recognized that, "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." 550 U.S. at 569 n.14.

Hood claims that he sufficiently pled "contract fraud and mistake" with particularity when he alleged that "the

agency reasons for taking such action was to defraud me of my employment." Informal Br. 11. In his amended complaint in Case No. 15-1200, Hood alleged that the Settlement Agreement "was the result of fraud, coercion, and I was under duress because of my psychiatric conditions." Amended Compl., *Hood v. United States*, No. 1:15-cv-1200 (Fed. Cl. Dec. 11, 2015), ECF No. 8 at 4. As the Court of Federal Claims found, however, Hood failed to identify any individual who committed the alleged fraudulent acts. *Hood*, 127 Fed. Cl. at 213. Nor has he alleged any facts from which a court could infer that a specific individual acted with the requisite state of mind. *See Exergen*, 575 F.3d at 1327. The Court of Federal Claims therefore correctly determined that Hood's allegations were deficient under Rule 9(b).

## III. CONCLUSION

We have carefully considered Hood's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Court of Federal Claims' decision dismissing Hood's complaints.

## AFFIRMED